# Grim's Appeal.

1. A devise to my wife, for her maintenance and support, of the house and lot at the corner of F. and W. streets, during her life, and at her death to become the *property* of J. L., the said property not to be subject to sale or mortgage, but to descend to his children free and unencumbered, but in case he has no children at his death, then, and in that case, to become the property of my daughter, J. R., gives only a life estate to J. L.

2. Where an administrator presented a petition to the Orphans' Court, asking

[Grim's Appeal.]

authority to sell land alleged to be the property of his intestate, it was proper for the court to dismiss such petition, when it was made to appear, by those interested, that the intestate had but a life estate in the premises.

THIS was an appeal by Philip L. Grim, the acting administrator of Joshua Logan, deceased, from the decree of the Orphans' Court of Allegheny county, dismissing the petition of the administrator, for an order to sell certain lots, alleged to be the property of the said Joshua Logan.

The petition set forth that the intestate died in 1854; that the petitioner, Philip L. Grim, obtained letters of administration on the estate of decedent, in the county of Beaver; that the Orphans' Court of Beaver county, on petition presented by said administrator, showing the insufficiency of the decedent's personal estate to pay his debts, made an order for the sale of certain real estate, situated at the corner of Ferry and Market streets, in the city of Pittsburgh, and county of Allegheny, of which the petitioner alleged that the intestate died seised: but, whether in fee or otherwise, the petitioner was not informed. The petition presented to the Orphans' Court of Allegheny county, concluded with a prayer for an approval of the order made by the Orphans' Court of Beaver, and for a decree that the said premises should be sold. A citation was thereupon issued to the widow and heirs of Joshua Logan, and all others interested; and on the 24th of March, 1855, the widow and heirs appeared, and filed their answer to the petition, the widow stating that she claimed no interest in the premises. The children of Joshua Logan, deceased, in their portion of the answer, set forth the will of David Logan, under which Joshua, the intestate, his son, claimed title. The material clause was as follows:

"I devise to my wife, Julia Logan, for her maintenance and support, the house and lot at the corner of Ferry and Water streets, bought of Mr. Findlay, during her life, and at her death to become the *property* of Joshua Logan; the said property not to be subject to sale or mortgage, but to descend to his children free and unencumbered. But in case he has no children living at his death, then, and in that case, to become the property of my daughter, Julia Richardson, in fee simple, or of heirs, in case she be not then living."

This will was dated March 27, 1830, and admitted to probate in 1831.

Joshua Logan, the intestate, supposing himself to be seised of an estate tail under this will, had pursued the usual method to bar the entail.

The court below, M'CLURE, P. J., delivered an elaborate opinion, deciding that the will gave Joshua Logan, the intestate, but a life estate, and a vested remainder in fee, in his children

living at the time of testator's death: contingent remainder for his after-born children, vested, as they came in *esse*, and dismissed the petition with costs, from which the administrator appealed.

*N. P.* and *G. L. B. Fetterman*, for appellant, contended that the Orphans' Court of Allegheny county could not properly inquire into the question of title: that that rested with the Orphans' Court of Beaver county; and referred to Act of 29th March, 1832, Purdon, 201, sec. 32; and that the will conveyed an estate in fee simple to Joshua Logan; and referred to *Morrison* v. *Semple*, 6 Binn. 98; *Hunter's Estate*, 6 Barr, 106; *Foster* v. *Stewart*, 6 Har. 25; *Stoever* v. *Stoever*, 9 S. & R. 434; *Johnston* v. *Morton*, 10 Barr, 248; *Carter* v. *M'Michael*, 10 S. & R. 432; *Paxson* v. *Lefferts*, 3 R. 73; *Walker et ux.* v. *Vincent*, 7 Har. 369; *Nightingale* v. *Burrell*, 15 Pick. 112; *James' Claim*, 1 D. 48; *Merryman* v. *Merryman*, 3 Munf. 440; *Wood* v. *Wood*, 1 East, 259; Lewis on Perpetuities, (12 Law Lib.) 157; *Hughes* v. *Sayer*, 1 P. Wms. 533; *Doe* v. *Perryn*, 3 T. R. 484; *Middlesworth* v. *Collins*, 8 Leg. Int.; 4 Kent's Com. 10; *Langley* v. *Heald*, 7 W. & S. 96.

*Courtney* and *Leslie*, for appellees, whom the court declined to hear, in their paper book, contended that the devise gave four estates, thus: 1. To the widow, during her life *expressly*; 2. Then to Joshua, during his life, by *manifest and necessary implication*; 3. Vested remainder in fee to his children; 4. Contingent remainder to Mrs. Richardson; and referred to *Foster* v. *Stewart*, 6 H. 24; *Turbett* v. *Turbett*, 3 Y. 187; *Hunter's Estate*, 6 B. 97; *Vaughn* v. *Dickes*, 8 H. 509; 1 Blackstone, 372; *Hoge* v. *Hoge*, 1 S. & R. 144; *De Haas* v. *Bunn*, 2 B. 335; 2 Jarman on Wills, sec. 370–372; Ib. 70; *Johnston* v. *Morton*, 10 B. 245; *Fearn's* Cont. Rem. 216; 4 Kent's Com. 203–207; *Minning* v. *Bardorf*, 5 Barr, 503; *Wager* v. *Wager*, 1 S. & R. 374.

The opinion of the court was delivered by

LOWRIE, J.—The Orphans' Court was right in refusing the order of sale of this property, because the intestate had but a life estate in it. The will of David Logan was prior to our Statute of Wills of 1833, and there are no words of inheritance in the devising clause to his son; and therefore it leaves the legal presumption that only a life estate was intended. True, this presumption might be overcome by other expressions, showing a different intention; but there are no such expressions. On the contrary, there are several very clear expressions that are totally incompatible with the supposition that anything more than a life estate was intended. That the son is prohibited from selling or

encumbering the land, is certainly of no consequence, if it be clear otherwise that he took a fee; but it is most important evidence that a fee was not intended. And when it is added, that, on his death, it shall go to his children, or, if he should die without leaving children living, to his sister, then it becomes very plain, that no more than a life estate was intended. The "property" or title which the testator had in the land, is devised to the son for life, and to his children after his death.

Decree affirmed with costs.